**Roy BOYETTE, Plaintiff,**

v.

**L.W. LOONEY & SON, INC., Astro-Valcour, Inc., and Federal Foam Technologies, Defendants.**

**Civil No. 1:94C 48G.**

United States District Court,
D. Utah,
Central Division.

July 30, 1996.

---

James R. Hasenyager, Marquadt Hasenyager & Custen, Ogden, UT, for plaintiff.

Robert H. Henderson, Snow, Christensen & Martineau, Salt Lake City, UT, for defendant Looney.

Terry M. Plant, Hanson Epperson & Smith, Salt Lake City, UT, for defendant AVI.

Russell G. Workman and William J. Hansen, Christensen & Jensen, Salt Lake City, UT, for defendant Federal Foam Technologies.

## MEMORANDUM DECISION AND ORDER

### J. THOMAS GREENE, District Judge.

This matter is before the court on motions for partial summary judgment by defendant Astro–Valcour, Inc. ("AVI") and defendant L.W. Looney & Sons ("Looney") relative to plaintiff's punitive damages claims. Plaintiff is represented by James R. Hasenyager. Defendant Looney is represented by Robert H. Henderson; defendant AVI is represented by Terry M. Plant; defendant Federal Foam Technologies (Federal) is represented by Russell G. Workman and William J. Hansen. The motions were argued and taken under advisement.

### FACTS

A description of the parties and underlying facts is set forth in a prior ruling of this court.[1] The following undisputed facts constitute the agreed upon predicate relative to the pending motions.

On October 13, 1993 an explosion occurred on the premises of Thiokol Corporation when plaintiff Roy Boyette was welding on the lid of a missile container. The explosion was caused by polyethylene foam which leaked gasses from its blowing agent,[2] butane, while enclosed in the container without ventilation.

AVI as manufacturer had contracted to supply polyethylene foam to Federal, which company shaped it to meet the specifications of Looney as the general contractor. AVI provided a Material Safety Data Sheet ("MSDS") to Federal with the initial shipment of the foam product as required by OSHA regulations.[3] The MSDS provided by AVI contained the following relevant statements:

*(14) Unusual fire and explosion hazards:* None.

\* \* \* \* \* \*

*(35) Precaution to be taken in handling and storing:* This product may contain traces of *flammable blowing agent* and should be *stored in well-ventilated areas to prevent buildup of flammable vapors.* Also consider humidity control to maintain relative humidity above 40% near cutting and grinding operations. (Emphasis added.)

Federal's employee, Cynthia Jones, testified that Federal knew that butane with its potentially flammable qualities was used in the production of AVI's foam. Despite this knowledge, Federal did not provide the MSDS or any other warning to Looney.

Upon receiving the foam from Federal, Looney placed it in missile containers supplied by Thiokol Corp. Although Looney did not know the foam was explosive, the con-

---

1. Memorandum Decision and Order dated December 30, 1994.

2. A blowing agent is that which expands the foam. Until the 1980's, polyethylene foam typically was manufactured with a freon based blowing agent. Due to the danger of ozone depletion, freon based blowing agents were outlawed in approximately 1990. According to plaintiff's expert witness, butane and pentane are now the only commercially feasible blowing agents used in the foam industry, and both hydrocarbons are highly flammable.

3. 29 C.F.R. § 1910.1200(g)(6)(i) provides: "Chemical manufacturers or importers shall ensure that distributors and employers are provided an appropriate material safety data sheet with their initial shipment, and with the first shipment after a material safety data sheet is updated."

tract between Looney and Thiokol required Looney to identify all hazardous substances and provide MSDS statements for such. In addition, Looney was required to comply with all applicable federal, state and local laws, government orders and regulations, and to mark each container with an appropriate precautionary label. The government had the right to monitor and inspect each container for conformity with specifications. Notwithstanding the foregoing, Looney had no actual knowledge of the foam's explosive nature when the containers were sent to Thiokol. Accordingly, no MSDS or any other warning was issued to Thiokol by Looney.

Upon delivery of the containers, Thiokol inspectors in coordination with U.S. government inspectors rejected Looney's containers because of nonconformity with specifications. Looney and Thiokol agreed that necessary modifications and repairs would be made by Thiokol and that the price would be reduced accordingly. Among other things, Thiokol was to weld on the missile container lids. The plaintiff was injured when gasses from the butane exploded upon contact with the welding flame.

Plaintiff asserts punitive damages against AVI and Looney [4] for acting in reckless indifference to the rights of others, i.e., failing to warn about the dangerous and explosive nature of the foam.

## ANALYSIS

■ The Utah Punitive Damages Statute, U.C.A. § 78–18–1, reads:

(1)(a) Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded and *if it is established by clear and convincing evidence* that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, *or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.* (Emphasis added).

The Utah Supreme Court has held that punitive damages should be awarded only in ex-

ceptional cases, and should never be intended to vent vindictiveness. *Behrens v. Raleigh Hills Hospital,* 675 P.2d 1179, 1186 (1983). Although actual intent to cause injury need not be shown, Utah case law requires that a defendant must know or ought to know (1) that a high degree of probability exists that the conduct would result in substantial harm; (2) that the conduct is "highly unreasonable or an extreme departure from ordinary care"; and (3) that a "high degree of danger is apparent." *Gleave v. Denver and Rio Grande Western R. Co.* 749 P.2d 660, 670 (Utah App., 1988) *quoting Behrens,* 675 P.2d at 1186–87.

This Court must determine from the undisputed facts whether the actions of AVI and Looney rise to the threshold level of "reckless indifference" so as to justify presentation of the issue of punitive damages to a jury.

## I. "Clear and Convincing" Evidence

■ The Utah punitive damages statute requires that punitive damages must be established "by *clear and convincing evidence* ..." U.C.A. § 78–18–1 (Emphasis added). The Utah Supreme Court, speaking through Justice Wolfe, defined the type of evidence needed to be clear and convincing:

That proof is convincing which carries with it, not only the power to persuade the mind as to the probable truth or correctness of the fact it purports to prove, but has the element of clinching such truth or correctness. Clear and convincing proof clinches what might be otherwise only probable to the mind ... But for a matter to be clear and convincing to a particular mind it must at least have reached the point where there remains **no serious or substantial doubt as to the correctness of the conclusion.** (Emphasis added).

*Greener v. Greener* 212 P.2d 194, 204 (1949). *See also Miskin v. Carter,* 761 P.2d 1378, 1380 (Utah 1988) and *Briggs v. Liddell* 699 P.2d 770, 772 (Utah, 1985). This demanding standard of proof constitutes the definitional requirement of "clear and convincing," and is

---

**4.** Plaintiff also initially sought punitive damages against Federal but settled its claim for punitives

against that company prior to the hearing on the motion before the court.

routinely applied in instructions to juries in Utah.[5]

As is set forth hereinafter, this court rules as a matter of law that a reasonable jury could not properly find from the undisputed facts by clear and convincing evidence that the conduct of either AVI or Looney constituted a "knowing and reckless indifference toward, and a disregard of, the rights of others" so as to justify an award of punitive damages.

## II. *"Knowing and Reckless Indifference"*

In case at bar, AVI's actions do not rise to the aggravated level required under either of the alternative requirements set forth in the Utah statute. The undisputed facts would not justify a determination that there was "wilful and malicious or intentionally fraudulent conduct" as is required in the first alternative, or that there was "reckless indifference" as required under the less demanding second alternative.

Plaintiff asserts that defendant AVI could properly be found liable for punitive damages by a jury because of "knowing and reckless indifference" in three particulars: (1) not disclosing the explosive nature of the foam in § 14 of the MSDS—"Unusual Fire Hazard"; (2) not disclosing butane as the foam's blowing agent in the MSDS; and (3) failing to warn downstream distributors and employers of the explosive nature of the foam. These alleged grounds for liability will be discussed seriatim.

As to the first particular, plaintiff acknowledges that AVI did "warn" Federal of the foam's explosive nature in MSDS § 35, but that the warning was inadequate and AVI should have clearly set forth the warning in *both* sections 14 and 35, underscoring

the conditions under which the foam could explode. However, OSHA regulations do not require such multiple warnings. OSHA General Industry Standards define a satisfactory warning in an MSDS as one which describes ". . . (ii) The physical and chemical characteristics of the hazardous chemical, (iii) The physical hazards of the hazardous chemical including the potential for fire, explosion, and reactivity (and) . . . (viii) Any generally applicable precautions for safe handling and use . . ." 29 C.F.R. § 1910.1200(g)(3). AVI satisfied all three requirements outlined in OSHA's General Industry Standards in the warning provided in § 35 of the MSDS. This court considers that where, as here, an adequate warning is given, failure to warn more than once or in more detail does not constitute *highly* unreasonable conduct or an *extreme* departure from ordinary care as required by the Supreme Court of Utah in *Behrens,* supra.

As to plaintiff's second ground of alleged reckless behavior, AVI had no duty to disclose butane as the blowing agent in view of its claim of trade secret. 29 C.F.R. § 1910.1200(i)(1) allows the manufacturer to withhold the specific chemical identity, including the chemical name, from the MSDS if a claim of "trade secret" is asserted[6]. AVI did claim 'trade secret' on the MSDS and complied with all requirements.[7] Since nondisclosure was permitted by law, it could not be regarded as being in reckless disregard of the rights of others.

As to the third ground asserted by plaintiff, AVI's failure to warn downstream distributors of the foam's dangers, AVI was not clearly required to do so. 29 C.F.R. § 1910.1200(g)(6) requires chemical manufacturers or importers, such as AVI, to provide an MSDS to distributors and employers with

5. MUJI 2.19 reads, "**Clear and Convincing:** Clear and convincing evidence is evidence that produces in your mind a firm belief as to the matter at issue ... For evidence to be clear and convincing, it must at least have reached the point where there remains no substantial doubt as to the truth or correctness of the conclusion based upon the evidence."

6. For a claim of trade secret to be successful, this regulation requires that: (1) the claim of trade secret be supported; (2) information is disclosed

in the MSDS concerning the properties and effects of the hazardous chemical; (3) the MSDS indicates that specific chemical identity is being withheld as a trade secret; and (4) the specific chemical identification is made available to health care professionals.

7. AVI's MSDS read, *"Ingredients:* Some specific chemical identities being withheld as trade secrets, but will be revealed to health professionals per 29 C.F.R. 1910.1200(c)."* (Italics added).

their *initial shipment* of the product, or with the *first shipment* after the MSDS is updated.[8] AVI did provide such a warning in the initial shipment to Federal. Distributors, such as Federal, are required to provide an MSDS to other distributors and employers with *their* initial shipment under 29 C.F.R. § 1910.1200(g)(7)(i).[9] Since AVI did comply with its affirmative duty to supply Federal with an MSDS in its initial shipment, failure by AVI to supply an MSDS to downstream distributors such as Looney did not constitute "knowing and reckless indifference to the rights of others."

In sum, this court determines that none of the alleged particulars urged by plaintiff would justify presentation to a jury of claimed punitive damages as against defendant AVI. At most, AVI's conduct could be determined to constitute negligence.

■ Turning to plaintiff's claim for punitive damages against defendant Looney, this court also rules that Looney's conduct could not properly be found to have been in "knowing and reckless indifference to the rights of others." The possible liability of Federal in punitive damages for failure to comply with the aforesaid regulation is not before the court since plaintiff has settled and abandoned its claim for punitive damages against Federal. The failure of Federal to supply an MSDS is pertinent, however, in assessing the conduct of Looney, since Looney did not receive notification that an MSDS would have provided. Looney may have been negligent in not exercising the care which possibly would have revealed the presence of the flammable blowing agent in the polyethylene foam, but it does not appear that there was conduct which rises to the level of reckless indifference. The undisputed facts are that Looney believed the foam to be inert, and had received no warning to the contrary. At most, Looney's conduct constituted negligence and/or breach of contract.

### III. *Ordinary Negligence*

■ An award of punitive damages may not be predicated solely upon a finding of ordinary negligence. In this regard, the Supreme Court of Utah in *Behrens*, supra, established the following foundational guideline concerning the relationship between negligence and punitive damages:

> Simple negligence will never suffice as a basis upon which such damages may be awarded. "Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute negligence."

675 P.2d at 1186, *citing* Restatement (Second) of Torts § 908 comment b at 465 (1979).[10]

This principle has been applied by courts in numerous jurisdictions. In this regard, the Supreme Court of Wyoming denied punitive damages to a log skidder who was struck by a protruding log because his employer was at most negligent: "Punitive damages are not appropriate in circumstances involving inattention, inadvertence, thoughtlessness, mistake, or even gross negligence." *Weaver v. Mitchell* 715 P.2d 1361, 1369 (1986). Referring to Comment b of § 908 at 1186 of the Restatement, the Supreme Court of Delaware said, "It is not enough that a decision be wrong. It must result from a conscious indifference to the decision's foreseeable effect." *Jardel Co., Inc., v. Hughes,* 523 A.2d 518 (1987) (denying punitive damages to a mall employee who was raped and abducted in the mall parking lot because the owner of the mall was at most negligent in not securing the parking lot.) Moreover, the Supreme Court of Hawaii, in *Masaki v. Gen-*

---

8. See fn 3, supra.

9. 29 C.F.R. § 1910.1200(g)(7)(i) provides: "Distributors shall ensure that material safety data sheets, and updated information, are provided to other distributors and employers with their initial shipment and with the first shipment after a material safety data sheet is updated."

10. Restatement (2d) of Torts § 908, comment b says, "*Character of defendant's conduct:* Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate—which is to say, conduct involving some element of outrage similar to that usually found in crime ... punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence ..."

*eral Motors Corp.* 780 P.2d 566 (1989), held that to justify punitive damages "(s)omething more than a commission of a tort is always required for punitive damages." *Id.* at 571 [11]

Based upon the foregoing, this court grants the Motions of defendants AVI and Looney for Partial Summary Judgment, and dismisses plaintiff's claims of punitive damages against said defendants.

**11.** *Masaki* quotes W.P. Keeton, Prosser & Keeton on the Law of Torts § 2, at 9 (5th ed. 1984): "Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage ... or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton."