**In re Garry L. EBERHARDT, Debtor–Appellant,**

v.

**COMERICA BANK, Creditor–Appellee.**

Civ. A. No. 93–75151.
Bankruptcy No. 93–41414.

United States District Court,
E.D. Michigan,
Southern Division.

July 28, 1994.

Horace D. Cotton, Detroit, MI, for debtor-appellant.

Elias Muawad, Comerica Bank, Legal Dept., Detroit, MI, for creditor–appellee.

## ORDER GRANTING DEBTOR'S APPEAL

GADOLA, District Judge.

On February 9, 1993, Garry L. Eberhardt ("Debtor") petitioned for relief under Chapter 7 of the United States Bankruptcy Code. Comerica Bank ("Creditor") thereafter filed a complaint objecting to the discharge of certain debt. Debtor filed an answer to Creditor's complaint on June 25, 1993. At the conclusion of the presentation of its proofs, Creditor brought a motion for judgment on partial findings, pursuant to Bankruptcy Rule 7052. On November 15, 1993, the bankruptcy court granted Creditor's motion and denied Debtor's motion for a directed verdict. On December 9, 1993, Debtor filed a notice of appeal. Before the court is Debtor's appeal of the bankruptcy court's order. For the reasons discussed below, the court will reverse the order and remand for further proceedings consistent with this opinion.

## I. Factual Background

Debtor was formerly the President of Lifeware System Designer Team, Inc. ("Life-ware"), currently in Chapter 7. Lifeware is a computer software development and service company in the business of building computer networking systems for nationwide distribution. Sometime prior to September 10, 1989, Lifeware agreed to provide its computer services to Thermo Window, Inc. ("Thermo Window"). According to Debtor, Lifeware agreed to set up a computer system suitable to Thermo Window's needs. Lifeware also agreed to help Thermo Window obtain financing for the necessary computer equipment.

Equity Plus is a commercial leasing corporation. On September 10, 1989, Equity Plus entered into a lease agreement with Lifeware for the provision of computer equipment that was personally guaranteed by Debtor (the "Lifeware lease"). In order to purchase this equipment from the manufacturer, Equity Plus entered into a non-recourse installment note with Creditor in the amount of $165,000. As security for the note, Equity Plus entered into a security agreement granting Creditor a security interest in the computer equipment covered by the Lifeware lease. Equity Plus also assigned its interest in the Lifeware lease to Creditor. As the assignee of Equity Plus, Creditor now stands in the shoes of Equity Plus with respect to the Lifeware lease.

Upon receipt of the computer equipment from Equity Plus, Lifeware installed its own software into the computers and shipped the computers to Thermo Window as the end-line user. On September 8, 1989, Thermo Window also entered into a lease agreement with Equity Plus (the "Thermo Window lease").[1]

Both the Lifeware and the Thermo Window leases were made on pre-printed, standardized forms supplied by Equity Plus. The forms include thirty paragraphs of "Additional Terms and Conditions." Among these terms and conditions is a non-transferability clause in paragraph 20, stating that "Lessee shall not assign, sell ... sublet or lend Equipment ... without Lessor's prior written consent." It is under this clause that Creditor seeks to declare the debt at issue non-dischargeable. Creditor claims that the

---

1. Thermo Window defaulted on this lease, filed Chapter 7, and obtained a discharge.

computer equipment leased by Equity Plus to Debtor was transferred by Debtor to Thermo Window without the written consent of the Lessor and thereby constitutes willful and malicious conversion.[2]

The facts are in dispute. According to Debtor, Equity Plus granted permission to Debtor to transfer the equipment but neglected to inform Creditor of this fact upon assigning the Lifeware lease. Debtor offers to this court the Thermo Window lease, dated September 8, 1989, as evidence of Equity Plus' consent to the transfer of the computer equipment. While there is no document in the record that specifies the equipment that is covered under the Thermo Window lease,[3] Debtor claims that Equity Plus leased the same equipment twice, once to Thermo Window as the end-line user, and once to Lifeware, the interim supplier. Debtor contends that the Lifeware lease, that is the lease between Debtor and Equity Plus, was intended merely as security for the Thermo Window lease.

Scott Yenglin, president of Equity Plus, was the sole witness called to testify in Creditor's case-in-chief. To an extent, Yenglin's testimony at the bankruptcy proceedings supports Debtor's contention that the Lifeware lease was intended by the parties to serve merely as security for the Thermo Window lease. Yenglin testified that Equity Plus entered into the lease agreement with Thermo Window because Equity Plus agreed to "manage," on behalf of Lifeware, the agreement between Lifeware and Thermo Window for the development of a computer networking system.[4] Furthermore, Yenglin testified to having knowledge of Thermo Window's possession of the computer equipment at issue. However, Yenglin also testified that Debtor never approached him regarding specific permission to sub-lease, transfer, or assign the equipment in the lease. Yenglin also testified that Thermo Window was at no time a party to the Life-

ware lease at issue. Yenglin claimed rather that the Thermo Window lease was an entirely separate agreement, and that at no time did he participate in any discussions with Thermo Window regarding the Lifeware lease.

At the close of Creditor's proofs, Creditor brought a motion pursuant to Bankruptcy Rule 7052. The bankruptcy court granted Creditor's motion, ruling that absent written consent of Creditor or Equity Plus, the transfer of the computer equipment took place without permission, therefore amounting to a willful and malicious conversion and qualifying the debt as non-dischargeable. Creditor was awarded judgment in the amount of $123,651.25.

Debtor appeals contending that the debt does not qualify as non-dischargeable under § 523(a)(6) because he received consent for the transfer of the equipment from Equity Plus. Debtor argues that the bankruptcy court erred in refusing Debtor the opportunity to present his version of the facts surrounding the lease agreements.

## II. Analysis

The bankruptcy court granted Creditor's motion for judgment on partial findings pursuant to Bankruptcy Rule 7052. Bankruptcy Rule 7052 adopts Rule 52(c) of the Federal Rules of Civil Procedure. A Rule 52(c) dismissal "operates as an adjudication upon the merits ... subject to the clearly erroneous standard of review." *Haskell v. Washington Twp.*, 864 F.2d 1266, 1274 (6th Cir.1988); *D.E. Rogers Assoc., Inc. v. Gardner Denver Co.*, 718 F.2d 1431, 1434 (6th Cir.1983), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984). The issue before the court, therefore, is whether the bankruptcy court's decision to grant Creditor's motion for judgment on partial findings pursuant to Bankruptcy Rule 7052 was clearly erroneous.

**2.** 11 U.S.C. § 523(a)(6) excepts from discharge any debt:

(6) for willful and malicious injury by the debtor to another entity or the property of another entity.

**3.** A copy of the lease between Equity Plus and Thermo Window is included in the record but there is no schedule attached to it describing the equipment covered by the Thermo Window lease.

**4.** From this testimony alone, it is unclear what Yenglin meant by the term "manage."

Federal Rule of Civil Procedure 52(c), adopted in Bankruptcy Rule 7052, provides, in part:

> (c) If during a trial without a jury *a party has been fully heard on an issue* and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. (emphasis added)

Rule 52(c) may be invoked in two cases: (1) A plaintiff may not have demonstrated the elements of his claim either in fact or in law, or (2) the plaintiff's own evidence may have established one of the defendant's defenses as a matter of fact or law. *CMS Software Design Systems v. Info Designs, Inc.*, 785 F.2d 1246, 1248 (5th Cir.1986). While the 1993 amendment to Rule 52(c) makes clear that judgment as a matter of law in non-jury trials may be entered against both plaintiffs and defendants, and with respect to issues or defenses that may not be wholly dispositive of a claim or defense, such a ruling would, nevertheless, demand that either a plaintiff or defendant be afforded the opportunity to be fully heard on the relevant issues prior to judgment. *See* Fed.R.Civ.P. 52(c), Advisory Committee Note to 1993 Amendment.

In the instant case, Debtor was not afforded the opportunity to present any evidence in defense of Creditor's claims, nor had Debtor waived his right to do so. In fact, the transcript of the proceedings indicates that Debtor's counsel specifically reserved his presentation of Debtor's direct examination until after Creditor had presented its proofs.

As indicated above, the facts in the case at bar are in dispute. Debtor contends that he received consent to transfer equipment through oral negotiations with Equity Plus prior to the signing of the Lifeware lease agreement. The bankruptcy court ruled that "if it is the defense that [the equipment] was transferred with the knowledge and consent of the Plaintiff, that consent now can only be manifested only [sic] through a *written in-strument* which has never been introduced into evidence in this Court by anyone." (Emphasis added). Implicit in the bankruptcy court's ruling are two decisions: (1) that the parol evidence rule, which bars extrinsic evidence of prior or contemporaneous oral agreements which contradict the terms of the contract, applies in this case; and (2) that a transfer in violation of the lease, regardless of whether there was oral consent, constitutes a willful and malicious conversion under 11 U.S.C. § 523(a)(6).[5]

Prerequisite to the application of the parol evidence rule is a finding that the parties intended the writing to be a complete expression of their agreement. Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on this question. *Central Transp., Inc. v. Fruehauf Corp.*, 139 Mich.App. 536, 544, 362 N.W.2d 823 (1984); *NAG Enter., Inc. v. All State Industries, Inc.* 407 Mich. 407, 410, 285 N.W.2d 770 (1979). The presence of an integration clause, while often taken as a strong sign of the parties' intent, is not conclusive in all cases, particularly when the contract is a pre-printed form drawn by a sophisticated seller, and presented to the buyer without any negotiations as to that particular term. *See Restatement (Second) of Contracts* § 209 comment b, § 216 comment e; and R. Anderson, supra, § 2–205:25; *see also Sierra Diesel Injection Serv. v. Burroughs Corp.*, 874 F.2d 653 (9th Cir.1989) (merger clause did not as a matter of law determine integration when contract consisted of pre-printed form drawn by sophisticated seller).

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." *McIntosh v. Groomes*, 227 Mich. 215, 218, 198 N.W. 954 (1924). Moreover, the "overreaching principle of contract interpretation" is that the court should look to all relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent. *Rowe v. Mont-*

---

5. See footnote 2.

*gomery Ward & Col., Inc.*, 437 Mich. 627, 641, 473 N.W.2d 268 (1991), (*quoting* E.A. Farnsworth, Contracts, § 7.10, at 492).

In the instant case, the actual intent of the parties may have been to allow the transfer of the computer equipment from Debtor to Thermo Window, regardless of the fine print on the back of a standardized Lifeware lease. In fact, as argued by Debtor, the eventual transfer of the computer equipment to Thermo Window may have been Lifeware's and Equity Plus' sole purpose behind entering into the Lifeware lease agreement. The integration clause of paragraph 29 appears as nearly the final term in the standardized, pre-printed portion of the lease agreement. This pre-printed portion includes thirty additional terms and conditions to the lease. Such a provision should not, as a matter of law, be seen as conclusive evidence of an integrated contract, without a full examination of the intent of the parties.

Likewise, the non-transferability clause of paragraph 20 is one of thirty additional terms and conditions to the lease, pre-printed on a standardized form. While Debtor admits knowledge of the terms in the lease agreement, he maintains that he, nevertheless, did in fact receive consent to transfer the equipment from Equity Plus. According to Debtor, this consent was manifested through oral negotiations regarding the entry into a "sale-lease-lease" agreement between Equity Plus, Lifeware, and Thermo Window.

■ Moreover, even if the transfer of the equipment was found to be in violation of the lease agreement, such a transfer, in the presence of oral consent, does not necessarily constitute a willful and malicious conversion under 11 U.S.C. § 523(a)(6). In order to establish non-dischargeability of debt based on willful and malicious injury, a court must make separate findings that the resulting injury was both "willful" and "malicious." Bankr.Code, 11 U.S.C.A. § 523(a)(6). Conversion of property may only be a basis for denying a discharge under § 523(a)(6), if the conversion was willful and malicious. An injury is willful if it results from an intentional or deliberate act, or if the court determines that debtor knew or should have known from the nature of the act that the resulting harm was certain to occur. *In re Adams*, 147 B.R. 407 (W.D.Mich.1992). To establish malice for purposes of showing non-dischargeability of debt, a creditor must, as a minimum requirement, prove debtor acted out of implied malice. Bankr.Code, 11 U.S.C.A. § 523(a)(6). Implied malice, for section 523(a)(6) purposes, is proven when a creditor shows that a debtor acted in conscious disregard of the rights of others, without just cause or excuse. *In re Adams*, 147 B.R. at 418. Assuming Debtor's factual allegations are true, it is possible that the transfer of the computer equipment to Thermo Window would not qualify as willful and malicious.

For the foregoing reasons, the court finds that Debtor was denied a fair opportunity to be fully heard on his factual claims. Allowing Debtor such an opportunity may serve to shed light on the actual intent of the parties. In addition, the Debtor should have an opportunity to be heard in order to properly determine whether the transfer constitutes a willful and malicious injury. The court therefore finds that entry of judgment at the close of Creditor's proofs was premature and inconsistent with Rule 7052's requirement that a party be fully heard on an issue prior to an entry of judgment against that party on that issue.

### ORDER

Therefore, it is hereby **ORDERED** that the bankruptcy court's November 15, 1993 order is **REVERSED** and the case **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED.**