**In re John T. SHEEHAN, Jr. and Linda H. Sheehan, Debtors.**

**Gerald Connell and Kathleen S. Connell, Plaintiffs,**

v.

**John T. Sheehan, Jr. and Linda H. Sheehan, Defendants.**

**Bankruptcy No. 91–13024. Adversary No. 97–1107.**

United States Bankruptcy Court, D. Rhode Island.

Dec. 17, 1999.

David A. Schechter, Law Offices of David A. Schechter, Providence, Rhode Island, for debtors/defendants.

Arthur W. Tifford, Miami, Florida, J. Ronald Fishbein, Providence, Rhode Island, for plaintiffs.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Complaint of Gerald and Kathleen Connell against the Debtors, John and Linda Sheehan, to determine the dischargeability of their debt to the Connells. At the close of the Plaintiffs' evidence, the Sheehans moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. After reviewing the record and the applicable law, and for the reasons stated below, the Motion to Dismiss is GRANTED.

## FACTS[1]

The facts, either uncontested or as determined by this Court, are derived from evidence presented during the Connells' case-in-chief, which consisted of the testimony of Richard Mittleman, Esq., Harold Schein, John Sheehan, Gerald Connell, and Kathleen Connell, and Exhibits A–Z and AA. In 1990 and prior thereto, Gerald Connell and John Sheehan were friends and business associates, and Sheehan, an attorney, had also done some legal work in the past for the Connells. In the Fall of 1990, John Sheehan, in need of cash, approached Gerald Connell and requested a loan. Coincidentally, Connell was also in need of money, so the two agreed to request a loan from a third individual, Harold I. Schein—also a friend and business acquaintance of Sheehan, wherein Connell and Sheehan would provide collateral to secure a $150,000 loan from Schein, with each to receive $75,000. Connell contends that he agreed to this arrangement partly in reliance on Sheehan's representation that among his assets was the assignment of a $50,000 bank account standing in the name of William Hustwit.

Sheehan explained his interest in the bank account as follows: as an accommodation he had cashed a third-party check for Hustwit and then deposited that check into his client's trust account. The check did not clear, however, and the bank charged Sheehan's trust account. To repair the damage, Hustwit assigned an interest in his bank account to Sheehan. As it turned out, however, the assignment was worthless, as the account proceeds had already been pledged as security for another obligation owing from Hustwit to (small world?) Harold Schein. There is no evidence that Sheehan was aware of this prior pledge when he represented the account to be an asset.

The loan closing was held on October 23, 1990, and in attendance were the Connells, John Sheehan, and Schein's attorney, Richard Mittleman, Esq. It was at the closing that the Connells first learned that the Sheehans were not listed as borrowers,

---

1. This opinion constitutes our findings of fact and conclusions of law made in accordance with Fed.R.Bankr.P. 7052 and 9014.

but instead were guarantors of a $150,000 loan to the Connells. Notwithstanding their surprise, but with full knowledge of the situation, the Connells went ahead with the closing,[2] and signed the note, mortgage, and other documents. John Sheehan signed the guaranty, but because his wife was not in attendance, asked if he could bring the documents home for her to sign, and Mittleman consented. Later that day or the next day, Sheehan returned the signed documents, purportedly executed by his wife, Linda. On October 25, 1990, the Connells delivered $72,000 to the Sheehans (their half of the net proceeds of the loan).

The Connells initially were required to pay interest only, with the principal to be repaid in two lump sums, and at the outset, in accordance with their private arrangement, the Sheehans and the Connells each sent checks to Schein. Then in February 1991, Sheehan failed to pay his one-half share of the interest, putting the loan in default. Acknowledging the difficulty this would cause for the Connells, but unable to do much about it, the Sheehans gave the Connells a $75,000 promissory note, together with a mortgage on their Newport home to secure this new note. With their financial condition continuing to deteriorate, on November 15, 1991, the Sheehans filed a petition for reorganization under Chapter 11, listing the Connells as secured creditors in the amount of $75,000. Ten months later the case was converted to a no asset Chapter 7 case, and on December 15, 1992, the Sheehans received their discharge. Curiously, the Connells did not file a dischargeability complaint against the Sheehans for the $75,000 loan. The Connells acknowledged receiving notice of the Sheehan bankruptcy and stated they did nothing further because of other,

more pressing issues going on in their lives at the time.

In October 1994, the Connells filed their own Chapter 7 case and Schein filed a motion for relief from stay, resolved by a consent agreement which provided *inter alia* that: as part of negotiating a repayment plan with the Connells, Schein assigned to the Connells the guaranty given to him by the Sheehans on the Connell loan. Thereafter, the Connells, as assignees, filed suit against the Sheehans in the Providence County Superior Court on the guaranty.

In response to the state court action, the Sheehans filed a motion to reopen their bankruptcy case for the purpose of adding creditors not previously scheduled. Over the Connells' objection the motion to reopen was granted, whereupon the Sheehans filed a motion to amend their schedules to add the Connells as creditor/assignees of the Sheehan guaranty. After hearing, that motion was also granted and the Connells were allowed sixty days within which to file complaints under Section(s) 523 and/or 727 of the Bankruptcy Code.

On July 7, 1997, the Connells filed the instant adversary proceeding, alleging *inter alia* that Linda Sheehan's signature on the guaranty was a forgery, and that their assignor, Harold Schein, would not have made the loan had he known that Linda Sheehan did not actually sign the note. The Complaint contains but one count, entitled "Action on Guarantee," under which the Connells seek payment on the guaranty, plus interest. The only statutory reference in the Complaint is the Plaintiffs' claim for relief under the heading "Jurisdiction," where the Connells aver: "It is a case proceeding under 28 U.S.C. § 157, 28 U.S.C. § 1334 and 11 U.S.C. § 523."[3]

---

**2.** In fact, Gerald Connell testified unequivocally that there was no coercion, and that there was full disclosure of the terms of the transaction before the execution of the documents.

**3.** Section 523 is divided into five subsections (a through e) and subsection "a" has eighteen enumerated exceptions to discharge. Without more than the broad reference to "11 U.S.C. § 523," it is impossible to know under

At the close of Plaintiffs' case the Sheehans moved to dismiss, on the ground that the Connells failed to establish a prima facie case. We took the matter under advisement, and also asked the parties to address the legal question whether the Connells, as obligors on the note, are eligible to become assignees of the Sheehans' obligation for the same debt.[4]

## DISCUSSION

■ A motion to dismiss at this stage of the proceeding is governed by Fed R.Civ.P. 52(c), incorporated into the bankruptcy context by Fed.R.Bankr.P. 7052, which provides:

> (c) Judgment on Partial Findings. If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Fed.R.Civ.P. 7052(c). The movant under this rule should prevail if the non-moving party has failed to make out a prima facie case, or if the court determines that a preponderance of the evidence goes against the non-moving party's claims. *See Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc. (In re Regency Holdings (Cayman), Inc.)*, 216 B.R. 371, 374 (Bankr.S.D.N.Y.1998), which held:

> The court does not evaluate the evidence under the standards governing a directed verdict. 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2573.1, at 496–97 (1995) ("Wright & Miller"). It does not draw

any special inferences in the nonmovant's favor, Wright & Miller § 2573.1, at 497–98, or consider the evidence in the light most favorable to the nonmoving party. *Geddes v. Northwest Missouri State Univ.*, 49 F.3d 426, 429 n. 7 (8th Cir.1995); *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F.Supp. 1454, 1460 (D.Kan.1996). Instead, the court acts as both judge and jury, *Grant v. Bullock County Bd. · of Educ.*, 895 F.Supp. 1506, 1509 (M.D.Ala.1995), weighing the evidence, resolving any conflicts, and deciding where the preponderance lies. *International Union of Operating Eng'rs, Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 257 (7th Cir.1994); *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F.Supp. at 1460; *Grant v. Bullock County Bd. of Educ.*, 895 F.Supp. at 1509; Wright & Miller § 2573.1, at 498–99.

*Id.* The Rule is "basically a tool provided a trial court to render a decision as a matter of law after consideration of all the evidence." *Celotex Corp. v. AIU Insurance Co. (In re Celotex Corp.)*, 216 B.R. 867, 872 (Bankr.M.D.Fla.1997). "A Rule 52(c) dismissal 'operates as an adjudication upon the merits ... subject to clearly erroneous standard of review.'" *Eberhardt v. Comerica Bank*, 171 B.R. 239, 242 (E.D.Mich.1994), *quoting Haskell v. Washington Twp.*, 864 F.2d 1266, 1274 (6th Cir. 1988).

In the present procedural context, it is important to remember that here we are dealing *only* with the Sheehan guaranty that was assigned by Harold Schein to the Connells. It is undisputed that the Connells' $75,000 claim was properly scheduled, and that claim was discharged in the Sheehans' bankruptcy. Although the Plaintiffs have focused almost exclusively on their $75,000 (discharged) loan, the only rights they may assert herein are those

---

what subsection the Connells seek to have this debt determined nondischargeable.

**4.** While this is an interesting legal question, for the reasons discussed *infra*, we need not and do not decide this issue.

originally held by Harold Schein under the guaranty.

In that regard, John Sheehan concedes that his wife Linda did not sign the guaranty personally, but contends that he signed her name with her permission.[5] Linda Sheehan has never disavowed her obligation under the guaranty, and the Plaintiff did not call her as a witness.

Harold Schein testified that because of their friendship, he "relied on John Sheehan and accepted his judgment," and as a result, he loaned $150,000 to the Connells. When asked whether he would have made the loan knowing that John Sheehan signed his wife's name on the guaranty, Schein answered that he would have done so, had Sheehan informed him that he had his wife's permission, or that he was signing pursuant to a power of attorney. On redirect examination by Connells' attorney Schein recanted only a bit, saying he would have required "legally binding documents" to make the loan to the Connells.

■ The Plaintiffs have problems both with the pleadings and the proof in this case. Neither from the papers, the Joint Pre–Trial Order, nor the evidence, is it possible to determine what section of the Code is the basis for the Plaintiffs' claim. The Complaint does not approach the minimal pleading requirements of Fed. R.Civ.P. 8, incorporated by Fed. R.Bankr.P. 7008, and nowhere requests that the debt be declared nondischargeable. Looking backwards, the complaint would not have survived a 12(b)(6) motion to dismiss filed prior to trial.[6]

■ The Bankruptcy Code's "fresh start" policy mandates that exceptions to discharge be narrowly construed, with the plaintiff required to show that his or her "claim comes squarely within an exception

enumerated in Bankruptcy Code § 523(a)." *Century 21 Balfour Real Estate v. Menna (In re Menna )*, 16 F.3d 7, 9 (1st Cir.1994). The Plaintiffs have fallen short of this requirement by not mentioning one subsection of Section 523(a), and based on the evidence we must conclude that the Connells have failed to make out a prima facie case under *any* provision of Section 523.

But in the interest of addressing all of the Connells' concerns, we will assume, for the sake of this discussion only, that the Connells are requesting that the debt be determined to be nondischargeable under Section 523(a)(2)(A) and/or 523(a)(4). Section 523(a)(2)(A) exempts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud," while Section 523(a)(4) exempts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

■ In construing Section 523(a)(2)(A) courts incorporate the general common law of torts. *See Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997), where the First Circuit Court of Appeals stated:

> Under the traditional common law rule, a defendant will be liable if (1) he makes a false representation, (2) he does so with fraudulent intent, i.e., with "scienter," (3) he intends to induce the plaintiff to rely on the misrepresentation, and (4) the misrepresentation does induce reliance, (5) which is justifiable, and (6) which causes damage (pecuniary loss).

*Id.* In discussing what constitutes a false representation, the court went on to say:

> The test may be stated as follows. If, at the time he made his promise, the debt-

5. Sheehan also testified that he had a blanket power of attorney from his wife—but he could not produce such a document. While we are skeptical of this assertion, it does not change the result.

6. The Plaintiffs have pressed their claims against both John and Linda Sheehan, but failed to present a scintilla of evidence as to Linda Sheehan, but in the interest of consistency and completeness of the record, our findings *infra* apply to both Debtors.

or did not intend to perform, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met). If he did so intend at the time he made his promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made. *Id.* at 787. In the instant case, the evidence does not establish that John Sheehan intentionally made a false representation, nor is there a reasonable basis to find that he forged his wife's signature with the intent of making the guaranty unenforceable.[7] The direct evidence is that John Sheehan signed Linda's name with her permission, and Linda Sheehan has neither denied that assertion nor denounced her obligation under the guaranty. The Connells want us to disbelieve John Sheehan, and to find that he forged his wife's signature with nefarious intent, but such a ruling would not be supported by the evidence.

Additionally, even if the required intent regarding the signature of Linda Sheehan were established, there is no evidence that Harold Schein justifiably[8] relied upon said misrepresentation, or that he was damaged thereby. To the contrary, Schein testified that he would have accepted the guaranty and completed the loan as long as John Sheehan represented that he signed his wife's name with her authorization. In the circumstances, we find that had Schein known all of the relevant facts, he would still have made the loan.

 As to any 523(a)(4) related claim, the term "fiduciary" is narrowly defined in the bankruptcy context and the "fiduciary relationship referred to in § 523(a)(4) ... [is] limited to express and technical trusts." *In re Cairone*, 12 B.R. 60, 62 (Bankr.D.R.I.1981) (*citing Davis v.*

*Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). Here, with no evidence whatsoever regarding the existence of a fiduciary relationship, there can be no showing that the "claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." *Century 21 Balfour Real Estate*, 16 F.3d at 9.

In conclusion, and giving the Connells the benefit of many doubts, the bottom line is that while they have portrayed a business arrangement that went sour, and which was probably doomed from the outset, the Connells have not produced evidence to support a claim that this debt, i.e., the guaranty, is nondischargeable.

Enter judgment for the Defendants, consistent with this opinion.

---

7. Here, the trier of fact would be hard-pressed, and would probably be abusing his/her discretion to infer such intent, based on the record.

8. See *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Sanford Inst. for Sav. v. Gallo*, 156 F.3d 71, 74–76 (1st Cir.1998).