**In re Marsha McQuarrie LANG, also known as Marsha Lang, also known as Marsha M. Lang, Debtor.**

**Robert F. Lang, M.D., Plaintiff–Appellee,**

v.

**Marsha McQuarrie Lang, Defendant–Appellant.**

BAP No. UT–01–097.
Bankruptcy No. 93–25329.
Adversary No. 94–02025.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

May 28, 2003.

504

Marsha M. Lang, Salt Lake City, UT, pro se.

Steven W. Dougherty, Anderson & Karrenberg, Salt Lake City, UT, for Plaintiff–Appellee.

Before McFEELEY, Chief Judge, BOHANON, and CORNISH, Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

The Debtor–Defendant, Marcia McQuarrie Lang ("Debtor"), appeals the order and judgment of the bankruptcy court for the district of Utah in favor of her ex-husband, Robert F. Lang ("Plaintiff"), which found that the Debtor committed fraud under Utah law and that the resulting debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A). First, the Debtor argues that a successor judge erred by not complying with Federal Rule of Civil Procedure 63. Second, the Debtor argues that the bankruptcy court erred when it found that the Debtor had violated Utah state fraud law, the debt was nondischargeable in bankruptcy, and the Plaintiff was entitled to compensatory and punitive damages.

We find no error in the successor judge's application to the proceedings below of Federal Rule of Civil Procedure 63. We affirm on the issue of whether the Debtor incurred a debt under Utah law that was nondischargeable under 11 U.S.C. § 523(a)(2)(A). We reverse and remand on the issue of the amount of compensatory damages, and we reverse on the issue of punitive damages.

## I. *Background*

The Debtor and the Plaintiff married in 1969. Two children were born during the marriage: a daughter on May 1, 1972, and a son on June 5, 1978. Although the Debtor and the Plaintiff had separated for a period of years in the early 1970s, the Plaintiff assumed that he had fathered both children.

In 1980, the Debtor and the Plaintiff divorced. Because the Plaintiff was presumed to have fathered the children and no issues concerning paternity were raised by either party during the divorce proceedings, the Utah state court ordered the Plaintiff to pay child support.

In 1991, eleven years after their divorce, the Debtor told the Plaintiff that he had not fathered either child and that the children's biological father was probably James E. Pickens ("Pickens"), with whom, it was later revealed, she had a sexual relationship during her marriage for approximately six to seven years.

Soon after, on October 9, 1992, the Plaintiff brought an eight-count complaint against Debtor and Pickens in the Utah state district court, alleging, among other things, fraud, breach of fiduciary duty, interference with filial relations, and intentional infliction of emotional distress ("state court Complaint"). The state court Complaint asked for general and compensatory damages, punitive and exemplary damages, future child support, and costs.

On October 7, 1993, the Debtor filed under Chapter 7 of the United States Bankruptcy Code. On October 26, 1993, the Plaintiff sought and obtained relief from the automatic stay for the sole purpose of permitting the state court to determine paternity. After ordering a paternity test, the state court determined that Pickens was 99% likely to be the father of both children.

On January 7, 1994, the Plaintiff timely filed an adversary proceeding in the bankruptcy court for the district of Utah, making the same claims he had made in the Utah state court and further alleging that any resulting debt was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4),

(a)(6).[1] The adversary proceeding went to trial on February 15 and 16, 1995.[2] In the adversary proceeding, the Debtor represented herself.

During the trial, the Plaintiff's divorce attorney, Brian Florence ("Florence"), testified about statements the Debtor made at a deposition taken on March 20, 1980, and at the state court divorce trial. The deposition at issue was not produced. Florence testified that when he deposed the Debtor he asked her "if she had had any extramarital affairs during her marriage" and the Debtor said "no." Adversary Trial Transcript at 26, *in* Appellant's App. at 1048. Florence further testified that at the state court divorce trial, the Debtor's attorney asked the Debtor if the two children were the issue and the result of the marriage, and the Debtor said yes. *Id.* at 29, *in* Appellant's App. at 1052. At the adversary proceeding trial, the Debtor raised no objections to Florence's testimony, and she had an opportunity to cross-examine him.

On February 17, 1995, the bankruptcy judge ("trial judge") made oral findings on the record and found that the Debtor had deceived the Plaintiff, but in the absence of any intent to hurt the Plaintiff, she had not committed fraud. The trial judge made the additional finding that because of Utah Code Ann. § 30–1–17.2 (2001), which provides that children born during a marriage are legally the issue of the marriage, that the Debtor did not lie in the divorce complaint. Ruling Transcript at 6, *in* Appellant's App. at 1184. The trial judge concluded that there was no cause of action under §§ 523(a)(2)(A), (a)(4), or (a)(6).

The Plaintiff appealed the bankruptcy court's ruling to the United States District Court for the District of Utah. On appeal, the Plaintiff argued that the trial judge had erred because Florence's testimony was conclusive evidence that the Debtor had made a false representation during the divorce. After considering the Plaintiff's argument, the district court concluded that Florence's testimony during the bankruptcy proceeding was inadmissable as hearsay and under the best evidence rule, Federal Rule of Evidence 1002, and affirmed the bankruptcy court.

On further appeal to the United States Court of Appeals for the Tenth Circuit, the Plaintiff prevailed in part. *Lang v. Lang (In re Lang)*, No. 95–4198, 1997 WL 26585 (10th Cir. Jan. 24, 1997). The Tenth Circuit held that the district court had erred when it found that Florence's testimony was not admissible because the testimony was admissible as an admission of a party-opponent under Federal Rule of Evidence 801(d)(2). *Id.* at *3. When considering the Plaintiff's fraud claims, the Tenth Circuit found that the trial judge had erred in its delineation of the elements of fraud under Utah state law. *Id.* at *2. Referring to a Utah state case, *Masters v. Worsley*, 777 P.2d 499 (Utah Ct.App.1989), which held

---

1. All future statutory references will be to Title 11 of the United States Code unless otherwise noted.

2. On January 14, 1994, the Plaintiff filed a motion to Withdraw Reference of the Case to Bankruptcy Court, asking that the case be returned to the district court for a jury trial. In a Memorandum Decision and Order entered on May 11, 1994, the bankruptcy court determined that the Plaintiff had filed an informal proof of claim when he had com-

menced an adversary proceeding and so had consented to its jurisdiction to award money damages on the state law claims when, in addition to his nondischargeability claims, the Plaintiff alleged his state law claims. Order, *in* Appellant's App. at 430. This decision was appealed to the United States District Court for the District of Utah and subsequently was affirmed. *Lang v. Lang (In re Lang)*, 166 B.R. 964 (D.Utah 1994). Neither party further appealed this decision.

that intent to harm is not an element of fraud, the Tenth Circuit remanded to the district court "with instructions that it remand to the bankruptcy court for consideration of the applicability of *Masters*" and "for further consideration in light of our reversal of the district court's holding as to the admissibility of the divorce counsel's testimony." *Id.* Finally, the Tenth Circuit affirmed the bankruptcy court's finding that the Debtor had no intent to harm the Plaintiff and so had no cause of action under § 523(a)(6).[3] *Id.* at *1.

After remand, no action was taken in the case for more than two years. The bankruptcy court entered an Order to Show Cause in May 1999, as to why the case should not be dismissed for failure to prosecute. In response, the Plaintiff filed proposed findings of facts and conclusions. The Debtor objected.

Because the first trial judge was no longer available, the case was reassigned to another bankruptcy judge ("successor judge"). The successor judge held a hearing on the Debtor's objection to the proposed findings and conclusions in October 2001, allowed the parties to file briefs, and held a final hearing on November 7, 2001. The successor judge stated his conclusions orally at the final hearing, finding that the Debtor had committed fraud under Utah state law and the judgment was nondischargeable under § 523(a)(2)(A). The successor judge awarded the Plaintiff $156,231.00 in compensatory and $10,000 in punitive damages plus prejudgment and post-trial interest.

On December 10, 2001, the successor judge entered an Order and Judgment. This appeal timely followed.

## II. *Appellate Jurisdiction*

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The bankruptcy court's judgment disposed of the adversary proceeding on the merits and is a final order subject to appeal under 28 U.S.C. § 158(a)(1). *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). The Debtor timely filed her notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. The parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the District of Utah. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001.

## III. *Standard of Review*

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); see Fed. R. Bankr.P. 8013.

■ A successor judge's actions under Federal Rule of Civil Procedure 63 are reviewed for abuse of discretion. *See Semaan v. Allied Supermarkets, Inc. (In re Allied Supermarkets, Inc.),* 951 F.2d 718, 727 (6th Cir.1991). "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circum-

---

**3.** While the Tenth Circuit stated that both the bankruptcy court and the district court had found no cause of action under § 523(a)(4), it never directly addressed that claim in its opinion. However, in the instructions for remand, the district court was not directed to refer the case to the bankruptcy court for reconsideration of this issue.

stances.'" *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991) (further quotation omitted)).

■ A bankruptcy court's factual findings are reviewed for clear error and its legal determinations *de novo. Phillips v. White (In re White),* 25 F.3d 931, 933 (10th Cir.1994); *see also Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1370 (10th Cir.1996). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gyp-* *sum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

## IV. *Discussion*

■ As a preliminary matter, the parties dispute the precise issues that are before this Court on appeal. In January 2002, the Debtor filed a Designation of Record and Statement of Issues, which listed ten separate issues.[4] After the parties filed their appellate briefs, the Debtor filed an Amended Statement of Issues and Amended Designation of Record ("Amended Record"), which listed seven issues.[5] The Plaintiff objected to the Debtor's Amended Issues and Amended Record ("Plaintiff's Objection"), arguing that he should be allowed to brief the Amended Issues[6] and that the Debtor's Amended

**4.** Those issues, as stated by the Debtor, are: "1. Prior to [the successor judge's] ruling, was there any duty to disclose under Utah law a suspicion as to parentage. 2. Is the testimony of the Plaintiff's divorce counsel credible on [its] face. 3. Did [the successor judge] [err] in not allowing the mandates of Rule 63 and recall the witnesses, Brian Florence and [the Debtor]. 4. Was [the Debtor] prejudiced by [the successor judge's] refusal to recall any witness. 5. Did [the successor judge] [err] by going further in his findings and rulings than justified by application of the holding in *Masters v. Woolsey,* a very narrow case. 6. Did [the successor judge] [err] in his ruling that his ruling does not apply to family law cases. 7. Did [the successor judge] [err] in ignoring public policy issues presented by [the Debtor]. 8. Is Plaintiff unjustly enriched by receiving money damages for reimbursement of support he had a duty to pay. 9. Did [the successor judge] have a duty to consider the credibility of Brian Florence's testimony. 10. Did [the successor judge] [err] in returning child support already paid in contrary [sic] to Utah Statutory law."

**5.** The amended issues, as stated by the Debtor, are: "1. Whether, the Bankruptcy Court erred in violation of the Federal Rules of Civil Procedure Rule 63 (Federal Rules [sic] of Bankruptcy Procedure 9028) for failing to recall Brian Florence, for failing to certify its familiarity with the record, for failing to determine whether or not Brian Florence's testi-

mony was disputed by [the Debtor] and whether or not [the Debtor] would be prejudiced by not recalling the key witness. 2. Whether or not Brian Florence's testimony is credible on its face. 3. Whether or not the Bankruptcy Court erred by finding [there] is a general duty to disclose based upon the presumption of legitimacy. 4. Whether or not the Bankruptcy Court erred by finding there is a general duty to disclose based on the marital relationship. 5. Whether or not the Bankruptcy Court erred in awarding reimbursement of child support by the mother to the legal father. 6. Whether or not the Bankruptcy Court erred in finding [that the Plaintiff] has no duty to support his children. 7. Whether or not the Bankruptcy Court erred in awarding punitive damages when the 10th Circuit upheld the Bankruptcy Court's findings that there was no clear error in [the trial judge's] findings that [the Debtor] had no intent to harm."

**6.** The Plaintiff argues that in Amended Issues item # 6, whether the bankruptcy court erred in finding that the Plaintiff had no duty to support his children, and item # 7, whether the bankruptcy court erred in awarding punitive damages, are new issues that are not in the original statement of issues. While we do not agree that they are wholly new issues, as we indicate, the purpose of Rule 8006 is to ensure accuracy, not to restrict the Appellant from appealing any of the issues preserved below for review.

Record, which contains more than eighteen hundred pages of documents, improperly included items never presented to the bankruptcy court. We will construe the Plaintiff's Objection as a Motion to Strike the Amended Issues and Amended Record ("Motion to Strike").

█ Federal Rule of Bankruptcy Procedure 8006 requires the appealing party to file a statement of issues and designation of the record. The purpose of those requirements is "to provide the reviewing court with an adequate basis for evaluating the appellant's claims on appeal" and " 'to identify the portions of testimony below that should be included in the record on appeal.' " *In re CPDC, Inc.*, 221 F.3d 693, 698 (5th Cir.2000) (quoting Editor's Comment, *Norton Bankruptcy Rules Pamphlet* 559 (1999–2000 ed.)). "Rule 8006 exists to ensure the adequacy of the record, and does not affect the ability of any party to appeal findings or conclusions of the bankruptcy court." *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 104 F.3d 1147, 1148 (9th Cir.1997) (per curiam) (citing 9 *Collier on Bankruptcy* ¶ 8006–10 (Lawrence P. King ed., 15th ed.1996)); *see also Norton Bankruptcy Rules Pamphlet* 594 (1996–97 ed.) ("The requirement of a statement of the issues is not intended to bind either party to the appeal as to the issues that are to be presented to the appellate court.").

In this case, we conclude that the Amended Issues and Amended Record have neither obscured nor changed the Debtor's argument. The Debtor's original ten issues do not differ in substance from the Amended Issues. While the Amended Record filed by the Debtor was largely irrelevant to the issues presented in this appeal, the Debtor provided both the relevant transcripts of the hearings below and the pertinent written rulings. Because the Plaintiff has alleged no inaccuracies in the

record, and the purpose of Rule 8006 is to ensure accuracy during the appellate process and not to restrict the appellant's appeal to particular issues, the Plaintiff's Objection, construed as a Motion to Strike, is denied.

█ The Debtor's first arguments focus on the proper interpretation and implementation of Federal Rule of Civil Procedure 63, which applies in cases under the Bankruptcy Code through Federal Rule of Bankruptcy Procedure 9028. Rule 63 delineates the procedure to be followed by a successor judge who replaces a judge at any point after a trial or a hearing begins. Pursuant to Rule 63:

> If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a hearing or trial without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

Fed.R.Civ.P. 63. Successor judges must only certify familiarity with the parts of the record that are relevant to the successor judge's role in the case. *Mergentime Corp. v. Washington Metropolitan Area Transit Authority*, 166 F.3d 1257, 1265 (D.C.Cir.1999); *Canseco v. United States*, 97 F.3d 1224, 1227 (9th Cir.1996). Express certification by the successor judge of a record is not required as long as the successor judge uses the procedure and language indicating that he has complied with the requirements of Rule 63. *Mergentime*, 166 F.3d at 1265. If the successor judge assumes a case after judgment has entered and is required to consider a

narrow issue, he or she "need only review the portion of the record relevant to that particular issue." *Id.; see also Canseco,* 97 F.3d at 1227 (finding that when ruling on post judgment motion for a new trial under Rule 63, "the successor district judge [must] read and consider all relevant portions of the record....").

In accordance with the instructions from the Tenth Circuit about how to proceed on remand, the issues before the successor judge were to determine whether the evidence presented met the legal standards for fraud under Utah state law, specifically the applicability of *Masters,* and to evaluate whether any resulting debt was nondischargeable under § 523(a)(2)(A). The Tenth Circuit also directed the successor judge to consider Florence's testimony concerning the Debtor's deposition in the divorce case.

■ The Debtor argues that the successor judge erred by proceeding without certifying his familiarity with the record. We disagree. The record indicates that the successor judge indicated his familiarity with the relevant parts of the record several times. At the beginning of the October 2001 hearing, the successor judge stated that he was "familiar" with the issues before him on remand. Hearing Transcript at 3, *in* Appellant's App. at 1399. When the successor judge orally announced his findings, he stated that he had "consider[ed] the evidence produced, the arguments of counsel, and ... applicable case law...." Transcript of Findings, *in* Appellant's App. at 1451. In his written judgment the successor judge stated that the Court "carefully considered the evidence presented, the arguments of counsel, and the directives from the United States Court of Appeals for the Tenth Circuit and the United States District Court for the District of Utah...." Final Order and Judgment at 2, *in* Appellant's App. at 1486. Although the successor judge never directly referred to Rule 63, on each occasion, the successor judge used a procedure and language indicating that he was familiar with the dictates of Rule 63. We conclude that the successor judge satisfied the requirements of Rule 63.

■ Next, the Debtor argues that the successor judge erred under Rule 63 by refusing to recall Florence to testify. The language of Rule 63 mandates that on a party's request a successor judge "shall" recall any available witness whose testimony is material and disputed. Fed.R.Civ.P. 63. Under limited circumstances, a successor judge may make findings of fact based on evidence heard by a predecessor judge. *Mergentime,* 166 F.3d at 1266. Such limited circumstances may include testimony that is undisputed or immaterial.[7] *Id.*

In this case, the successor judge found that Florence's testimony concerning events that occurred during the divorce proceedings was material under Rule 63, but it determined that Florence's testimony was not in dispute and so did not recall him. Transcript of Findings at 8–9, *in* Appellant's App. at 1455–56. Subsequently, the successor judge orally made findings of fact based on the record before him.

The Debtor claims that Florence's testimony was material and disputed, his credibility was at issue, and the successor judge erred in finding otherwise. First, the Debtor claims that when a 1994 deposition

---

7. We note, as observed by the Tenth Circuit, the Debtor never objected to Florence's testimony. *Lang,* 1997 WL 26585, at *3 n. 3 (stating that the Debtor "did not object to the testimony at trial, thus depriving the bankruptcy court of the opportunity to rule on its admissibility.").

transcript [8] was published in the adversary proceeding trial and used by the plaintiff's attorney for impeachment purposes, it was substantive trial evidence. Whether the 1994 deposition was substantive trial evidence is significant because the Debtor contends that in the 1994 deposition she denied telling Florence that she never had extramarital affairs.

If properly presented to the court, and admitted by the judge, a deposition may be used as substantive trial evidence. Federal Rule of Bankruptcy Procedure 7032 refers to the use of depositions in adversary proceedings and provides that Federal Rule of Civil Procedure 32 applies. Pursuant to Rule 32, at trial, a party may use a deposition "so far as admissible under the rules of evidence applied as though the witness were then present and testifying, [and a deposition] may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof...." Fed. R.Civ.P. 32(a). The Tenth Circuit has found that under Rule 32, a party may introduce " 'as a part of his substantive proof, the deposition of his adversary, and it is quite immaterial that the adversary is available to testify at trial or has testified there.' " *Coletti v. Cudd Pressure Control,* 165 F.3d 767, 773 (10th Cir.1999) (quoting *King & King Enters. v. Champlin Petroleum Co.,* 657 F.2d 1147, 1163–64 (10th Cir. 1981)). The admission of such deposition testimony is "subject to the sound discretion of trial court." *Id.* at 773 (citing *Reeg v. Shaughnessy,* 570 F.2d 309, 316 (10th Cir.1978)).

At the post-remand hearing, the Debtor, who was then represented by counsel, argued that the 1994 deposition testimony placed Florence's trial testimony and his credibility in dispute and so asked that Florence be recalled to testify. The successor judge concluded that the 1994 deposition had not been admitted into evidence, nor had the Debtor used any part of the 1994 deposition to impeach Florence's credibility.[9] On these grounds, the successor judge denied the Debtor's motion to recall Florence. The successor judge's conclusions are supported by the record.

There is nothing in the record that indicates that the Debtor sought to have the 1994 deposition admitted as substantive evidence at trial. The Plaintiff's attorney used the 1994 deposition transcript during

---

8. At trial there were two pertinent depositions. Florence testified about the Debtor's testimony at a deposition that took place on March 20, 1980 but was never produced. The Debtor argues that her testimony in a deposition taken on February 1, 1994, refutes Florence's testimony.

9. The 1994 deposition was published but never admitted as evidence. The introduction occurred as follows:

Q [by Anderson (Plaintiff's Attorney)]: Did you tell the truth in your deposition?
A [by Debtor]: To the best of my ability, yes.
Q: All right. Would you turn to page 77?
THE COURT: Would you like the deposition published?
MR. ANDERSON: I would, Your Honor, if I could.
THE COURT: You have already done it.

MR. ANDERSON: I thought I had by making the reference, Your Honor.
THE COURT: Well, has that deposition ever been filed with the Court?
MR. ANDERSON: We brought the original today, Your Honor. And the original is before the [Debtor].
THE COURT: And you're making that part of the record now so it should be part of the record before this Court and filed here.
MR. ANDERSON: Yes, Your Honor.
THE COURT: Why don't you mark it and give it to the clerk and let her mark it as being filed with the court so we know what we have. It need not be marked as an exhibit just marked as filed in the Court today.
Adversary Trial Transcript at 24–25, *in* Appellant's App. at 627–28.

his direct examination of the Debtor at trial, and limited portions of the 1994 deposition were used solely to impeach her, but it was never admitted as an exhibit or read into the record as substantive evidence. Adversary Trial Transcript at 23–24, *in* Appellant's App. at 626–27. Furthermore, at trial, the Debtor never denied that the deposition had occurred in the divorce proceedings, and she never used any part of the 1994 deposition to impeach Florence.[10]

Next, the Debtor argues that Florence should have been recalled because Florence's credibility was at issue. According to the Debtor, the trial judge did not find Florence credible. Although the Debtor admits that there is nothing in the record indicating what the trial judge thought about Florence's testimony, she infers that the trial judge did not find Florence credible from the fact that the trial judge made no specific findings about the testimony or the 1994 deposition and that the trial judge did not find that she had committed fraud. The successor judge disagreed, finding nothing in the record to indicate that the trial judge had not found Florence credible.

█ If the credibility of a witness is not at issue, a successor judge may decide a case based on a transcript. *Henry A. Knott Co. v. Chesapeake & Potomac Tel. Co.*, 772 F.2d 78, 85–86 (4th Cir.1985); *accord Home Placement Serv., Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1204 n. 6 (1st Cir.1987) (recognizing that prejudice may exist if the successor judge is required to determine credibility of witnesses whom he or she did not observe at the original trial, but concluding that successor judge may determine issues on the record that depend "not on witness credibility, but on the legal sufficiency of largely uncontradicted ... evidence...."). First, we note that the record reflects no findings as to whether the trial judge found Florence credible; in fact, the trial judge made no findings about Florence's testimony.[11] Second, the Debtor never impeached Florence or controverted his testimony.[12] We conclude that the successor judge did not abuse his discretion in refusing to rehear the testimony of Florence after remand.

█ Finally, the Debtor argues that her briefs and her closing argument at trial were substantive evidence that con-

---

10. The Debtor's only efforts at impeaching the Florence at trial involved questions concerning Florence's fidelity and his friendship with the Plaintiff. Adversary Trial Transcript at 31–35, *in* Appellant's App. at 1054–58.

11. The Tenth Circuit also made this observation. *Lang*, 1997 WL 26585, at *3.

12. At the trial, the Debtor called only herself and the Plaintiff. The Debtor's entire direct testimony was as follows:

Okay. There was no intent in this case to harm [the Plaintiff]. A set of circumstances came up and events evolved one after the other. And many people contributed to these events, even Plaintiff himself.

And the kind of maliciousness and intent and deliberateness is lacking because it's not there. It happened over a long period of time. Intervening events happened.

You know, there was no intent to, you know, have something happen one way or the other.

It was—tried to take a lot of circumstances into—under advisement, at the same time trying to decide which would be the best thing to do.

I'm sorry for all the—the way things turned out. And I'm sorry that the marriage between [the Plaintiff] and I did not last. And I'm sorry that it all didn't turn out the way I would have liked it also, but it didn't.

And anything else would be to address issues that really aren't relevant here. We've seen a show, a lot of things and a lot of emotion.

Adversary Trial Transcript at 127–28, *in* Appellant's App. at 1150–51.

troverted Florence's testimony. While the Debtor appears to acknowledge that neither briefs nor closing argument is normally valid evidence, she apparently urges this Court to construe it as evidence because, although she is a licensed attorney, prior to trying the dischargeability action *pro se,* she never had practiced law as a litigator. This we cannot do. Counsel's statements in a brief or during a trial are not evidence. *See Exeter Bancorporation, Inc. v. Kemper Sec. Group, Inc.,* 58 F.3d 1306, 1312 n. 5 (8th Cir.1995) (quoting *United States v. Fetlow,* 21 F.3d 243, 248 (8th Cir.1994), for the proposition that " '[S]tatements of counsel are not evidence' and do not create issues of fact."); *see also In re Nielsen,* 211 B.R. 19, 22 n. 3 (8th Cir. BAP 1997) (stating that statements of counsel are not evidence unless "expressly stipulated as admissible evidence"). While courts will give some leeway to a *pro se* litigant, they cannot take unsubstantiated statements as factual evidence. In the absence of any evidence that Florence's testimony was controverted, or that his credibility was at issue, the successor judge did not abuse his discretion by declining to recall Florence.

Moreover, the Debtor was represented by counsel when the bankruptcy court proceeded after remand. The Debtor's attorney stated plainly that "the court might—I say it can, I think, consider all of the testimony about that deposition [in the divorce case] including [the Debtor's] statements and come to its own conclusion now or as we have also urged in our papers consider rehearing the issue." Hearing Transcript at 12, *in* Appellant's App. at 1408. Thus, in presenting the court with an alternative means of proceeding, the Debtor's attorney conceded that the bankruptcy court could render a decision without rehearing the testimony and waived any objection to the procedure employed by the bankruptcy court. *See*

*Higginbotham v. Corner Stone Bank (In re Higginbotham),* 917 F.2d 1130, 1132–33 (8th Cir.1990) (concluding that litigant waived right to new trial under Rule 63 because he failed to object to the procedure that the successor judge employed; a litigant " 'has no right to sit back and await a decision of the case before objecting to the procedure.' ") (quoting *Townsend v. Gray Line Bus Co.,* 767 F.2d 11, 18 (1st Cir.1985)); *Milbrew, Inc. v. Commissioner,* 710 F.2d 1302, 1308 (7th Cir.1983) (concluding that litigant waived right to object to successor judge deciding case on the existing record by agreeing to reassignment).

The Debtor's next set of arguments focus on whether the successor judge erred when he found that she was liable under the Utah state law for fraudulent misrepresentation, and that the resulting debt was nondischargeable under § 523(a)(2)(A). The state law of fraud controls with respect to whether fraud has occurred, while bankruptcy law controls with respect to the determination of nondischargeability. *Grogan v. Garner,* 498 U.S. 279, 283–84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Here, the alleged fraud occurred in Utah. Under Utah law, fraudulent misrepresentation is established when a party demonstrates that the other party made "a false representation concerning a presently existing material fact which the representor either knew to be false or made recklessly without sufficient knowledge, or the omission of a material fact when there is a duty to disclose, for the purpose of inducing action on the part of the other party, with actual, justifiable reliance resulting in damage to that party." *Taylor v. Gasor, Inc.,* 607 P.2d 293, 294 (Utah 1980).

In *Masters,* the Utah appellate court found that a husband had a cause of

action for fraudulent misrepresentation against his wife on the grounds that he was not the biological father of three of their five children. *Masters,* 777 P.2d. at 502. Specifically, the court found that a state district court had erred when it granted summary judgment to the wife because there was a fact issue as to whether the wife had lied in divorce proceedings when she denied that she had a relationship with another man during the marriage. *Id.* As observed by the Tenth Circuit, under the Utah state law of fraudulent misrepresentation, there is no intent to harm requirement. *Lang,* 1997 WL 26585, at *2 (citing *Masters,* 777 P.2d at 501–02).

 Pursuant to the Bankruptcy Code, a debtor will not be discharged from any debt "for money, property, services . . . to the extent obtained by—(A) false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). Under this subsection a claim will be nondischargeable if the following elements are proven: "[1] the debtor made a false representation; [2] the debtor made the representation with the intent to deceive the creditor; [3] the creditor relied on the representation . . . ." *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir.1996). The creditor's reliance must have been justifiable, *Field v. Mans,* 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), and the creditor must have sustained a loss as a result. *Young,* 91 F.3d at 1373. "False pretenses" or "representations" are representations knowingly and fraudulently made that give rise to the debt.[13] *Driggs v. Black (In re Black),* 787 F.2d 503, 506 (10th Cir.1986), *abrogated in part on other grounds, Grogan v. Garner,* 498 U.S. 279, 283, 111 S.Ct.

654, 112 L.Ed.2d 755 (1991); *see also Missouri v. Audley (In re Audley),* 275 B.R. 383, 388 (10th Cir. BAP 2002) (finding debtor must knowingly make a false representation). The creditor bears the burden of proving by a preponderance of the evidence that all elements are present. *Grogan,* 498 U.S. at 287, 111 S.Ct. 654.

The successor judge found that the Debtor had violated state law, resulting in damages to the Plaintiff that were nondischargeable under § 523(a)(2)(A). The trial judge reasoned as follows: 1) the Debtor had a duty to her ex-husband to reveal her suspicions about paternity; 2) the Debtor lied during the divorce proceedings when she denied having extramarital affairs; 3) the Plaintiff had justifiably relied on all of these representations and so had not questioned paternity. With respect to damages, the successor judge determined that the Plaintiff had "sustained a loss in an amount equal to the costs of prenatal care, labor, delivery, visitation expenses and pre and post divorce support and other expenses for the children." Ruling Transcript at 11–12, *in* Appellant's App. at 1458–59.

The Debtor argues that the successor judge erred on the *four* following points: 1) whether there is a general duty to disclose infidelities under Utah state law based on the marital relationship; 2) whether the Plaintiff has a duty to support "his children"; 3) whether the law supported awarding a reimbursement of child support by the mother to the legal father; 4) whether it was within the bankruptcy court's jurisdiction to award punitive damages. We will address each argument in turn.

---

**13.** For a comprehensive discussion of the relationship between fraudulent misrepresentation under § 523(a)(2)(A) and the Restatement (Second) of Torts, see *Skull Valley Band of Goshute Indians v. Chivers (In re Chivers),* 275 B.R. 606, 618–620 (Bankr.D.Utah 2002).

The first issue raised by the Debtor is whether the trial judge erred by imposing upon the Debtor a duty to disclose her infidelities to the Plaintiff during the divorce proceeding. The Debtor argues that the important policy implications regarding the legitimacy of children and the disruption of paternity preclude a duty to disclose doubts about parentage.[14] Therefore, the successor judge erred when he determined that the resulting debt was nondischargeable.

The successor judge made two findings with respect to the issue of whether the Plaintiff had established that the Debtor made a fraudulent misrepresentation under Utah state law. First, the successor judge determined that, in accordance with the marital relationship and the statutory presumption of paternity in Utah, the Debtor "had a duty to disclose her suspicions [concerning paternity]." Ruling Transcript at 10, *in* Appellant's App. at 1457. Second, the trial judge found that "during the course of the divorce proceedings [the Debtor] affirmatively denied having an extramarital affair." *Id.* at 14, *in* Appellant's App. at 1461. The successor judge concluded that the Debtor's "false misrepresentations of fidelity" in her deposition in the divorce case, separate and apart from her "omissions concerning paternity in light of her duty to disclose"

supported the Plaintiff's claim for nondischargeability under § 523(a)(2)(A). *Id.* at 10, *in* Appellant's App. at 1457. The successor judge further concluded that the Plaintiff had justifiably relied on this misrepresentation and had incurred money damages.

▮ Here, the pertinent finding with respect to whether the debt was nondischargeable was the successor judge's second finding, that the Debtor intentionally misrepresented her fidelity during the divorce proceedings. That finding is enough to support the successor judge's conclusion that the Debtor knowingly made a fraudulent misrepresentation with the intent to deceive as required under § 523(a)(2)(A).[15]

▮ Next, the Debtor argues that the successor judge erred in awarding compensatory and punitive damages because once the Plaintiff acknowledged the children as his own, he had a duty to support them. Utah law does not corroborate this argument. In fact, Utah case law is clear, once the issue of non-paternity is established, a non-biological father has no duty to support any children that are not biologically related to him. *Masters,* 777 P.2d at 501 (finding "[c]hildren born during the parties' marriage are presumed legitimate, but that presumption, if rebutted, means

---

**14.** Utah law provides that "children born to the parties after the date of their marriage shall be deemed the legitimate children of both of the parties." Utah Code Ann. § 30–1–17.2 (2001). We do not dispute that there are important policy considerations underlying Utah law concerning paternity. *See, e.g., Lopes v. Lopes,* 30 Utah 2d 393, 518 P.2d 687, 689 (1974) (explaining the policy reasons behind the presumption of paternity in Utah as well as the prevailing rule in Utah, known as Lord Mansfield Rule, that parents cannot give testimony that would tend to illegitimatize a child). However, as we explain, the bankruptcy court's findings about the debtor's duty to disclose are irrelevant with respect to the

nondischargeability of the debt under § 523(a)(2)(A).

**15.** The successor judge found as follows:

With respect to the statement made by [the Debtor] in the course of her deposition during the divorce proceeding and in light of her admission at trial that she did in fact engage in extramarital sexual relationship with Dr. Pickens, this court concludes that her deposition testimony constitutes a false representation.

Ruling Transcript at 10, *in* Appellant's App. at 1457.

that the non-biological father has no financial responsibility toward the child.").

 Similarly, Debtor's argument that the Plaintiff adopted the children by acknowledgment fails. In this argument the Debtor appears to be making an equitable estoppel argument that because the Plaintiff has called the children his, he is estopped from now denying parentage and terminating child support.[16] However, this argument has been specifically rejected by the Utah courts. *See Masters*, 777 P.2d at 502–503 (finding that a biological mother alleging equitable estoppel cannot establish the necessary elements of representation, reliance, and detriment, so as to prevent the non-biological parent from de-

nying liability for support when the non-biological parent had no knowledge that he was not the biological father).

 The Debtor's next argument is that the successor judge erred in awarding damages; she contends that neither the compensatory damages nor the punitive damages were supported by law. As a preliminary matter, we must discuss an issue of current controversy in our circuit, that is whether a bankruptcy judge has the jurisdiction to award money damages in a § 523(a) proceeding.[17] We note that all circuit courts that have addressed the issue have concluded that bankruptcy courts do have jurisdiction to enter money judg-

---

**16.** In her brief, the Debtor argued that statutory law and case law support this argument, citing the Utah case *Slade v. Dennis*, 594 P.2d 898 (Utah 1979). The Debtor's reliance on *Slade* is misplaced. The legitimation statute, Utah Code Ann. § 78–30–12 (1953) referenced in *Slade* and quoted in the Debtor's brief, concerned a biological father's ability to legitimize a child born out of wedlock. Neither the statute nor *Slade* have any application to this case because it is undisputed that the Plaintiff is not the father of the children. Furthermore, the statute at issue was repealed in 1990. *See* 1990 Utah Laws ch. 245 § 24.

**17.** *See, e.g., First Omni Bank, N.A. v. Thrall (In re Thrall)*, 196 B.R. 959 (Bankr.D.Colo. 1996); *Porter Capital Corp. v. Hamilton (In re Hamilton)*, 282 B.R. 22 (Bankr.W.D.Okla. 2002) (following *Thrall*); *but see Valencia v. Lucero (In re Valencia)*, 213 B.R. 594 (D.Colo. 1997) (arguably overruling *Thrall* when it concluded that a bankruptcy court has jurisdiction to quantify damages and enter a money judgment in dischargeability proceeding); *Boucher v. McCarter (In re McCarter)*, 289 B.R. 759, 762–63 (Bankr.D.N.M.2002) (stating that bankruptcy courts have the jurisdiction to award money damages); *Hixson v. Hixson (In re Hixson)*, 252 B.R. 195, 198 (Bankr.E.D.Okla.2000) (same); *Builders Steel Co. Inc. v. Heidenreich (In re Heidenreich)*, 216 B.R. 61, 63 (Bankr.N.D.Okla.1998) (same).

*Thrall* is relied on by most courts who find that bankruptcy courts do not have jurisdiction to award money damages. In *Thrall*, the bankruptcy court found no authority in the Code or in the legislative history for bankruptcy courts to enter money damages as had been explicitly provided by § 17(c) of the Bankruptcy Act. *Thrall*, 196 B.R. at 964–65. However, recently, in *Hi–Qual Roofing & Siding Materials, Inc. v. Ridsdale (In re Ridsdale)*, 286 B.R. 238 (Bankr.W.D.N.Y. 2002), a bankruptcy court found evidence in the Interim Bankruptcy Rules and Forms that disputes *Thrall's* underlying premise. "The Committee Note to Interim Rule 4003 stated that former Rule 409(b) and (c) [addressing the entry of judgment on debts determined to be nondischargeable] 'are unnecessary because of the expanded jurisdiction of the Bankruptcy Court and preservation of right to trial by jury where allowed by statute.' " *Ridsdale*, 286 B.R. at 239 (quoting Interim Bankruptcy Rules and Forms Manual (Callaghan & Company, 1979) drafted by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States). *Ridsdale* argues that it was on this basis that both the Supreme Court and Congress "have repeatedly approved the successor Rule (Rule 4007) without the need for explicit authority to enter a money judgment." *Id. See also* Randolph J. Haines, *Old Rules Reveal Pacor's Shortcomings*, Norton Bankr.Law Advisor, January 2003, at 1–4.

ments.[18] In accordance with these other circuits, we conclude that under the broad congressional grant of jurisdiction given to bankruptcy courts under 28 U.S.C. § 157, bankruptcy courts have the jurisdiction to award money damages in a § 523(a) proceeding.[19]

With respect to the damages, the Debtor contends that the trial judge improperly awarded compensatory damages to the Plaintiff in an amount that approximated the pre-divorce and post-divorce child support he had paid. As grounds for this argument, the Debtor cites public policy and contends that the Plaintiff should have

to pay because he had "all the privileges and enjoyment of having custody of the children, of being their legal father...."[20] Appellant's Brief at 34.

■■■ The Plaintiff counters that the proper remedy for fraud is restitution of the benefit received and that therefore, the damage award was correct. He cites *St. Pierre v. Edmonds*, 645 P.2d 615, 618 (Utah 1982), for the proposition that restitution of an award granted in a divorce proceeding that was procured by fraud was found appropriate. In *St. Pierre*, the Utah Supreme Court found that an equitable remedy may be proper in a divorce

18. *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017–18 (9th Cir.1997) (holding that it is within the bankruptcy court's jurisdiction to determine money damages for the following reasons: a nondischargeability proceeding is a core proceeding; " 'it is impossible to separate the determination of the dischargeability function from the function of fixing the amount of the non-dischargeable debt'; and 'equitable jurisdiction attaches to the entire cause of action' ") (quoting *Snyder v. Devitt (In re Devitt)*, 126 B.R. 212, 215 (Bankr.D.Md.1991)); *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 164 (2d Cir.1995) (finding that "[t]he entry of a money judgment ... finds support in the bankruptcy court's inherent equitable powers."); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 966 (6th Cir.1993) (reasoning that because a bankruptcy court is an equitable court that may decide all the matters in dispute and give complete relief and that "a party properly before a court of equity subjects himself 'to all the consequences that attach to an appearance' " that a bankruptcy court may determine money damages in a nondischargeability proceeding) (quoting *Alexander v. Hillman*, 296 U.S. 222, 241, 56 S.Ct. 204, 80 L.Ed. 192 (1935)); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir.1991) (same); *cf. Abramowitz v. Palmer*, 999 F.2d 1274, 1279 (8th Cir.1993) (holding that a bankruptcy court possesses jurisdiction to enter money judgment in a non-core proceeding against a third party).

Finally, we note that the district court also considered this issue in the Plaintiff's appeal

of the bankruptcy court's denial of his Motion for Withdrawal of Reference. While the issue was presented as whether the Plaintiff has a right to a jury trial, the district court found that once a party files a formal or informal proof of claim, that party has waived its right to a jury trial and the bankruptcy court has jurisdiction over the entire claim because "it is functionally impossible to determine whether a debt is dischargeable without addressing issues of liability and damages." *Lang*, 166 B.R. at 966–67 (citing *Siemens Components, Inc. v. Choi (In re Choi)*, 135 B.R. 649, 650 (Bankr.N.D.Cal.1991)).

19. For a thorough examination of bankruptcy jurisdiction, *see* Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 Wm. & Mary L.Rev. 743 (2000). Brubaker argues that the bankruptcy estate is a federally created entity with both in personam and in rem jurisdiction. *Id.* at 829. According to Brubaker, the bankruptcy court's "related to" jurisdiction is, in effect, supplemental jurisdiction exercised through the bankruptcy court's in personam jurisdiction over the estate. *Id.* at 939. Brubaker concludes that a bankruptcy court has supplemental jurisdiction in an adversary proceeding to award money damages based on state law claims. *Id.* at 806–07.

20. We note that in essence this was a finding made by the trial court that was rejected by the Tenth Circuit. *Lang*, 1997 WL 26585, at *2.

case when a property settlement is obtained by duress or fraud. *Id.* at 618–19. Here, unjust enrichment is the equitable remedy the Plaintiff requested, and it is a mixed question of law and fact.[21] *Desert Miriah, Inc. v. B & L Auto Inc.*, 12 P.3d 580, 582 (Utah 2000). Unjust enrichment is established when three elements are present: 1) a benefit conferred on one person by another; 2) the recipient must appreciate or have knowledge of the benefit; 3) the retention of the benefit by the recipient must be under such circumstances as to make it inequitable to retain it without payment of its value. *Id.* at 582–83.

■ The successor judge found that the Debtor had been benefitted to the extent that the Plaintiff supported the children and that the support was a result of the Debtor's misrepresentation. The successor judge stated plainly that it was "not retroactively modifying a [state court child] support order, rather, damages are awarded based on [§] 523(a)(2)(A) of the Bankruptcy [Code and] based on tortious conduct." Transcript of Findings at 13, *in* Appellant's App. at 1460. The successor judge awarded Plaintiff $156,231 in compensatory damages, which represented $80,797 in child support payments, $91,064 for additional out-of-pocket expenses incurred up to 1991, and $5,000 in trip expenses plus interest. Of this amount, $20,630 was offset for the period of time during the marriage that the daughter was in the Debtor's sole custody. *Id.* at 15–16, *in* Appellant's App. at 1462–63. While child support payments the Debtor made following the divorce may be compensable under Utah law, we can find no support for an award of damages prior to the misrepresentation that gave rise to the cause of action, which in this case was the Debtor's intentional misrepresentation of her fidelity during the divorce proceedings. Additionally, we can find nothing in the record to support the award of $91,064, as it appears to be for undocumented expenses [22] both prior to and following the divorce and is entirely separate from any child support paid by the Plaintiff.[23] We

21. The Debtor argues that the Plaintiff never pled unjust enrichment and now should not be allowed to use that argument. However, the record indicates that the Plaintiff did claim unjust enrichment although he never specifically used that term. Furthermore, the equitable remedy of unjust enrichment appears to be the basis on which the successor judge awarded damages.

22. At trial the undocumented expenses for the period from 1973 through 1978 were explained by expert witness Merrill Norman ("Norman"), a certified public accountant and consultant. Norman determined the costs of raising the children by calculating the amount that the Plaintiff probably spent supporting the children based on an extrapolation from the time the Plaintiff paid child support compared to a national study that approximated the cost of raising a child to maturity. Adversary Trial Transcript at 9, *in* Appellant's App. at 1032. Norman also calculated undocumented expenses incurred after the parties' divorce. However, given the fact that there were documented expenses in the form of the child support Plaintiff paid, it is unclear why these additional expenses were included.

23. The total of all undocumented compensatory damages from 1977 through 1991 awarded by the successor judge was $70,434. This figure was derived from Plaintiff's Exhibit 23. According to that exhibit, the Plaintiff incurred a total of $122,812 in undocumented expenses between 1972 and 1996. The successor judge found that the Plaintiff could not claim any expenses following 1991; these expenses totaled $31,748, leaving a total of $91,064. Approximately $49,970 of the $91,064 was for expenses incurred during the marriage. From this amount, the successor judge deducted $20,630 for the years during the marriage when the couple were separated and the daughter was in the Debtor's sole custody. For the years prior to the divorce, 1977 through 1980, the successor judge awarded a total of $29,340 of undocumented expenses.

conclude that the case must be remanded on this issue for a determination of an appropriate award of damages based on child support actually paid following the misrepresentation made by the Debtor.

█ Debtor's final argument is that the successor judge erred when he awarded punitive damages of $10,000, as it exceeded the scope of the remand. We agree.

█ In Utah, "punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." Utah Code Ann. § 78–18–1(a) (1992). Punitive damages are awarded only in limited circumstances. *Orr v. Brigham Young University*, 960 F.Supp. 1522, 1531 (D.Utah 1994), *aff'd without published opinion*, 108 F.3d 1388, 1997 WL 143600 (10th Cir. 1997). Ordinary negligence will not support an award of punitive damages. *Boyette v. L.W. Looney & Son*, 932 F.Supp. 1344, 1349 (D.Utah 1996). Punitive damages may therefore be awarded under Utah law when the tortfeasor has the specific intent to harm or a reckless indifference toward the harm that might occur. An award of punitive damages under state law is part of the nondischargeable debt delineated in § 523(a)(2)(A). *Cohen v. de la Cruz*, 523 U.S. 213, 216–19, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998).

The successor judge found by clear and convincing evidence that the Debtor intended the wrong. The successor judge found the intent of the Debtor was as follows:

> to conceal from [the Plaintiff] the extramarital affair and the resulting facts which gave rise to her strong suspicion that the children were a product of that affair.... [D]uring the course of the divorce proceedings she affirmatively denied having an extramarital affair. Therefore, the court finds that such actions manifest a requisite intent set forth in 78–18–1(a) of the Utah Code....

Ruling Transcript at 14–15, *in* Appellant's App. at 1461–62. The successor judge awarded $10,000 in punitive damages. In contrast, the trial judge made the following finding:

> As to the fraud, I find that [the Debtor] deceived [the Plaintiff] by failing to tell him of her affair with Dr. Pickens and that Dr. Pickens was the biological father of both children.
>
> I find, however, that the specific purpose of [the Debtor's] deception was not to harm [the Plaintiff]. The purpose was to continue to satisfy her own foolish emotional desires.

Ruling Transcript at 6–7, *in* Appellant's App. at 1184–85. The trial judge concluded that as there was no specific intent to harm, there had been no willful or malicious injury and therefore no cause of action under § 523(a)(6) and no basis for punitive damages. *Id.* at 7–8, *in* Appellant's App. at 1186–87. Subsequently, the Tenth Circuit affirmed the finding by the trial judge that the Debtor had no intent to harm the plaintiff and found further that because specific intent to harm is a necessary element of the intentional infliction of emotional distress, the Plaintiff had no cause of action under § 523(a)(6).[24]

---

**24.** Under § 523(a)(6), a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity" will not be discharged. 11 U.S.C. § 523(a)(6). In

*Lang,* 1997 WL 26585, at *1. Because the Tenth Circuit affirmed the trial judge on the issue of specific intent to harm, we conclude that the successor judge exceeded the scope of his remand when he awarded punitive damages. Although The Plaintiff argues, correctly, that a reckless indifference and disregard for the rights of others may also support a claim for punitive damages, that does not appear to be the basis on which the successor judge awarded them. More important, the trial judge had found that there was no basis for punitive damages, and the directions from the Tenth Circuit on remand did not include an instruction to reexamine that issue.

### V. *Conclusion*

For the reasons set forth above, the bankruptcy court's determination that the Debtor was liable for fraudulent misrepresentation under Utah state law and that the subsequent debt is nondischargeable under § 523(a)(2)(A) is AFFIRMED. However, we REVERSE and REMAND for the entry of a judgment for findings consistent with this order on the issue of compensatory damages, and we REVERSE on the issue of punitive damages.

BOHANON, Bankruptcy Judge,
Concurring in Part and Dissenting in Part.

I concur in the part of the majority's decision that affirms the trial court's declaratory judgment that the Debtor's debt to Dr. Lang is excepted from her discharge. I must dissent, however, from that part of the decision affirming the trial court's award of a money judgment on the excepted debt.[1]

The majority states that there is a "broad congressional grant of jurisdiction given to bankruptcy courts under 28 U.S.C. § 157 . . . to award money damages in a § 523(a) proceeding." Majority Opinion at 22. This polemic, however, is simply beyond the limited grant of bankruptcy jurisdiction to the federal district courts and transgresses the narrow boundaries of their jurisdiction over bankruptcy cases. It also conflicts with our admonition to not "read jurisdictional statutes broadly." *Finley v. United States,* 490 U.S. 545, 549, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

Federal bankruptcy jurisdiction is found in 28 U.S.C. § 1334(a), which grants the district courts "original and exclusive jurisdiction of all cases under title 11." The only part of this adversary proceeding that arises under title 11 is the complaint that the debt be excepted from the discharge. There is federal jurisdiction over it because section 1334(b) allows the district courts to decide "all civil proceedings arising under title 11, or arising in or related to cases under title 11." There is no question but that a complaint based on 11 U.S.C. § 523(a)(2) arises under title 11. It begs sound reason, however, to go on and say that a state law suit for damages arises in or relates to the bankruptcy case. Dr. Lang's suit for damages against the Debtor is totally separate and distinct

---

*Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court explained that § 523(a)(6) requires that a debtor intend to injure a creditor, stating "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Geiger,* 523 U.S. at 61, 118 S.Ct. 974.

1. While neither party has raised any issue of subject matter jurisdiction it is hornbook law that "a federal court, whether trial or appellate, is obliged to notice on its own motion the want of its own jurisdiction, or the lower court's lack of subject matter jurisdiction when a case is on appeal." 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3522, at 70 (2d ed.1984) (hereinafter Wright & Miller).

from the bankruptcy case. It is purely a state law claim, having no relation to title 11 and has its own existence regardless of the bankruptcy petition. The issue of whether or not Dr. Lang is entitled to damages is a state law matter, and whether the Debtor can discharge that debt in bankruptcy is a federal law matter. The state law claim for damages certainly doesn't arise under title 11, nor does it arise in or relate to the bankruptcy case, for it is totally independent of both title 11 and the case.

I must also specifically mention my disagreement with the majority's conclusion that 28 U.S.C. § 157(a) is a jurisdiction granting statute. That section deals only with procedures and the referral of title 11 cases to the bankruptcy courts. One must look exclusively to 28 U.S.C. § 1334(a) for the grant of jurisdiction which is placed in the district, not bankruptcy, courts. It is nice to postulate, as do cases cited by the majority, that the federal district and bankruptcy courts ought to have jurisdiction to award money damages out of equitable concerns for judicial efficiency, but Congress clearly didn't see fit to usurp the state courts in that regard. And, in any event, it certainly isn't uncommon for trials to be bifurcated to deal with issues of liability and damages separately.

The majority also insinuates that the doctrine of law of the case applies, Majority Opinion at 21 n. 18, referring to *Lang v. Lang (In re Lang)*, 166 B.R. 964 (D.Utah 1994), where earlier in this adversary proceeding Dr. Lang moved to withdraw the reference to the bankruptcy court in order to try his complaint to a jury in the district court. In denying this request the district court concluded that Dr. Lang's complaint against Ms. Lang constituted a claim against the bankruptcy estate, and therefore, he waived any right to have the reference withdrawn and a jury trial. It is

elemental that for an issue, of fact or law, to be precluded in a subsequent case it must have been actually litigated and determined. *See Restatement of the Law (Second) of Judgments* § 27 (1982). The district court did not consider subject matter jurisdiction under 28 U.S.C. § 1334(a). It dealt only with reference to the bankruptcy court under 11 U.S.C. § 157(a), which is not an issue before us. All the decision holds is that because he filed a proof of claim Dr. Lang waived any right to have the reference withdrawn under section 157(d). Any implication in the district court decision that section 157(a) confers jurisdiction is dictum and "[t]he actual-decision requirement means that dictum is not the law of the case, just as actual decision does not support issue preclusion unless [the] decision was necessary to support the judgment." 18B Wright & Miller § 4478, at 664–67.

Additionally, Dr. Lang's waiver of the right to a jury trial can't be considered a waiver of jurisdiction, for "the parties cannot waive lack of jurisdiction by express consent, or by conduct, or even by estoppel; the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants." 13 Wright & Miller § 3522, at 66–68. Therefore, the earlier ruling is not the "law of the case," and I remain obligated to investigate the want of subject matter jurisdiction.

If the majority is correct when it concludes that Congress granted such broad powers to the federal courts over bankruptcy cases, where then does that jurisdiction end? What if the creditor, in a complaint under section 523(a), seeks to join a non-debtor, third-party defendant who may be a joint obligor with the debtor? Could it then be said that the dispute between the creditor and this unrelated

third party arises from or relates to the bankruptcy case even though it has no nexus with the case?

As another example when a creditor requests relief from the automatic stay under 11 U.S.C. § 362(d) there plainly is an issue arising under title 11. If the relief is granted in the bankruptcy case the creditor then goes to the appropriate nonbankruptcy forum to enforce its contract or foreclose its lien. Under the scheme advanced by the majority wouldn't the creditor, once the automatic stay is modified, then bring the complaint to enforce its state law rights in the district court and does that suit to enforce contract remedies arise under title 11? If so, could the district court refer that issue to the bankruptcy court?

If a debtor's discharge is denied under 11 U.S.C. § 727 would the creditors then bring their suits to enforce their state law claims for damages in the district court? Is that case any different from one where a creditor whose debt is excepted from the discharge under 11 U.S.C. § 523(a) enforces its state law claim for damages in the federal court? That is the judgment affirmed by the majority today.

What if confirmation of a plan of reorganization is denied under 11 U.S.C. § 1129? Would all the creditors then bring their state law claims against the debtor in the federal court?

One could conceive other paradigms *ad infinitum* and the district courts would become courts of general jurisdiction, ostensibly under the limited grant found in section 1334(a). They then would try a

multitude of traditional state law claims merely because a debtor happens to file a bankruptcy petition. The subject matter jurisdiction of the district courts simply doesn't reach this far and in arriving at their conclusion the majority, and the courts they cite, misunderstand the distinct differences between 28 U.S.C. §§ 1334(a) and 157(a). They each have separate meanings and serve separate functions. Section 1334 grants jurisdiction over title 11 cases to the district courts, and section 157 allows those courts to refer those cases to the bankruptcy courts, under certain limitations and circumstances.[2] Section 157 doesn't confer jurisdiction at all, and there is no congressional enactment granting jurisdiction in the bankruptcy courts.

While not directly addressed by the majority, some discussion of supplemental jurisdiction, once referred to as pendent or ancillary jurisdiction, in the federal courts is à propos. In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court explored this concept and held that in certain cases federal jurisdiction, which otherwise might not exist, could be found if a state law claim is ancillary to the federal jurisdictional basis.

Subsequently, in 1990, Congress passed 28 U.S.C. § 1367, entitled "Supplemental jurisdiction." In pertinent part this statute provides that:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have

---

**2.** This two step scheme of granting title 11 jurisdiction to the district courts under section 1334(a) and then allowing them to refer those cases to the bankruptcy courts under section 157(a) was put in place by the Bankruptcy Amendments and Federal Judgeship Act of 1984 in order to deal with the constitu-

tional infirmities announced by the Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See generally* 1 *Collier on Bankruptcy* ¶ 3.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2002).

original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

At first reading, one might conclude that this enactment now grants jurisdiction to the district courts and, by referral, the bankruptcy courts, to enter a money judgment on Dr. Lang's complaint. Such, however, isn't the case. In the first place, the explicit language of section 1367(a) says that it applies "[e]xcept as ... provided otherwise by Federal statute...." In the case of bankruptcy cases the exception is found in 28 U.S.C. § 1334(a), which is the "exclusive" grant of bankruptcy jurisdiction. *See* 18B Wright & Miller § 3523.1, at 175 ("Under Section 1367(a), supplemental jurisdiction does not apply if the federal statute forming the basis of original jurisdiction makes contrary provisions.").

In *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562 (5th Cir.1995), the court concluded that section 1367 supplemental jurisdiction does not extend to a cross-claim by a creditor against an unrelated third party for contribution and indemnity in a case before the bankruptcy judge. The decision says that "even assuming that a district court could exercise jurisdiction supplemental to its bankruptcy jurisdiction described in 28 U.S.C. § 1334, there is nothing in the jurisdictional statutes to indicate that the district court could refer such a case to the bankruptcy court." 51 F.3d at 573. We're in the same situation here. *See First Omni Bank, N.A. v. Thrall (In re Thrall)*, 196 B.R. 959, 969 n. 8 (Bankr.D.Colo.1996) (quoting *Walker*, 51

F.3d at 573). It is not necessary to reach the issue of whether the district court could award damages to Dr. Lang under section 1367, for that has not occurred.

I have already discussed similar reasons why bankruptcy jurisdiction is limited to only allowing entry of declaratory judgments on dischargeability complaints, and there is no reason to repeat them here. *See Porter Capital Corp. v. Hamilton (In re Hamilton)*, 282 B.R. 22 (Bankr. W.D.Okla.2002).

Accordingly, I dissent from the portion of the majority's decision that affirms the trial court's award of any money damages and would remand the proceeding with instructions that the bankruptcy court enter a judgment limited to the declaration that the debt, whatever it may be, is excepted from the Debtor's discharge. The parties then would be free to litigate the damages issue in the appropriate nonbankruptcy forum and raise whatever state law claims and defenses that may be relevant.